OPINION
PER CURIAM.
Mirsanjar Mirhakim petitions for review of a final order of removal entered by the Board of Immigration Appeals (“BIA”), which denied his application for asylum, withholding of removal, and relief under the Convention Against Torture (“CAT”). For the reasons that follow, we will deny the petition for review.
Mirhakim is a native of Uzbekistan. He was admitted into the United States in *818 February 2004 to attend a photography convention. He overstayed his admission period and worked without authorization. In April 2006, he was served with a notice to appear, charging him as being removable pursuant to 8 U.S.C. § 1227(a)(1)(B) (remaining beyond authorized period), and § 1227(a)(l)(C)(I) (failing to comply with non-immigrant status). He conceded re-movability and sought asylum, withholding of removal, and relief under the CAT.
Mirhakim testified that he is a devout Muslim.[1] Although the majority of Uz-beks are also Muslim, many are not devout. Those who are devout, he claimed, are persecuted by the government. In support of his application, Mirhakim testified to the following events: 1) he graduated from a high school that was later closed by the Uzbek government, though he testified that the school was not religious; 2) he was required to work as a translator for the KGB for four days. Some of his duties included the translation of religious documents in order to determine if they contained any extremist messages; 3) he attended religious meetings, where he befriended a man who was later arrested for organizing an anti-government group;[2] and 4) he was stopped and questioned by the police because he wore a beard, a sign in Uzbekistan of a devout Muslim.
Mirhakim also attempted to demonstrate a well-founded fear that he will be persecuted upon return to Uzbekistan. First, he pointed to an incident that occurred in May 2005 in the city of Andijon, during which at least 173 government protesters were killed. Mirhakim also testified that after he left Uzbekistan to attend the photography convention, the KGB questioned his family about his whereabouts. In addition, he claimed that he could not freely worship in his home country because the Uzbek government requires religious organizations to register and surveils the mosques that are allowed to operate. Finally, he claimed that if he were to marry, his wife and daughters would be discriminated against because they would wear hijabs, which are required by his branch of Islam but are viewed with suspicion by the Uzbek government.
The Immigration Judge (“IJ”) did not make a credibility determination,[3] but denied all substantive relief. The IJ found that Mirhakim was ineligible for asylum because he had filed his application more than one year after he had entered the United States and had not shown changed or extraordinary circumstances sufficient to excuse the delay of filing. See 8 U.S.C. § 1158(a)(2)(B) & (D).[4] In addition, the IJ *819 found that Mirhakim was ineligible for withholding of removal because he had not demonstrated past persecution and had failed to show a clear probability that he would be persecuted if he were to return to Uzbekistan. Finally, the IJ found that Mirhakim was ineligible for relief under the CAT because he had not shown that he is more likely than not to be tortured upon return to Uzbekistan.
The BIA adopted and affirmed the IJ’s decision, adding that the Andijon incident, by itself, did not amount to the changed country conditions that would justify an extension of the one-year deadline in § 1158(a)(2)(B). The BIA also noted that the continued surveillance and harassment of Muslims in Uzbekistan did not materially change the circumstances in the country, and that Mirhakim had not shown that he will likely be persecuted or tortured upon return to Uzbekistan. Mirhakim then filed a timely petition for review.
In his petition, Mirhakim argues that the BIA erred in finding that he had not established changed country circumstances to warrant an exception to the one-year asylum application deadline. He also argues that the BIA erred in finding that he was ineligible for withholding of removal. To the extent that Mirhakim challenges the timeliness determination, we lack jurisdiction. See 8 U.S.C. § 1158(a)(3). In addition, we will not consider the denial of CAT relief because Mirhakim failed to raise the issue in his brief. See In re Surrick, 338 F.3d 224, 237 (3d Cir.2003) (recognizing that if a party fails to raise an issue in his opening brief, the issue is waived).
We have jurisdiction to review final orders of removal. 8 U.S.C. § 1252(a)(1). Because the BIA “invoke[d] specific aspects of the IJ’s analysis and factfinding in support of [its] conclusions,” we review both the decisions of the IJ and the BIA. See Voei v. Gonzales, 409 F.3d 607, 613 (3d Cir.2005). “[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.” 8 U.S.C. § 1252(b)(4)(B). Determinations that an alien experienced “persecution” or has a “well-founded fear of persecution” are findings of fact that we review under the substantial evidence standard. Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001). The decisions must be affirmed “unless the evidence not only supports a contrary conclusion, but compels it.” Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir.2003) (quoting Abdille, 242 F.3d at 484).
An applicant seeking withholding of removal “must establish a ‘clear probability’ ... that he/she would suffer persecution” if returned to the country of removal. Ghebrehiwot v. Att’y Gen., 467 F.3d 344, 351 (3d Cir.2006). “Persecution includes threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom,” Wong v. Att’y Gen., 539 F.3d 225, 232 (3d Cir.2008) (internal quotations omitted), but it does not “encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional,” Fatin v. I.N.S., 12 F.3d 1233, 1240 (3d Cir.1993).
An applicant can create a presumption of future persecution by “establishing] that he suffered persecution in the past.” Wang v. Gonzales, 405 F.3d 134, 139 (3d Cir.2005). Mirhakim has not *820 made this showing. His sole contacts with government officials came when he worked as a translator for the KGB and when he was questioned by the police because of his beard. On these occasions, he was not confined, assaulted, or threatened. The closing of his former high school and the arrest of his friend did not directly affect him and, in any event, did not constitute persecution of Mirhakim. See Wong, 539 F.3d at 232. Substantial evidence supports the conclusion that Mirhakim did not suffer anything amounting to past persecution.[5]
An applicant who cannot show past persecution may still be eligible for withholding of removal if he or she can demonstrate a likelihood of future persecution. See Zubeda, 333 F.3d at 469-70. Here, substantial evidence supports the conclusion that Mirhakim did not establish a likelihood of future persecution. He testified that, shortly after he arrived in the United States, the KGB questioned his family about him. His speculation that the KGB is waiting to persecute him upon return to Uzbekistan is insufficient to establish a likelihood of future persecution. See also Toussaint v. Att’y Gen., 455 F.3d 409, 415 (3d Cir.2006) (finding that a statement “that a person would be in danger in a particular place does not mean she is likely to be persecuted”). In addition, we note that the Uzbek government allowed Mirhakim to freely leave the country. See Ali v. Gonzales, 401 F.3d 11, 16 (1st Cir. 2005) (finding that the applicant’s ability to freely leave the country is one factor to consider in evaluating the applicant’s well-founded-fear claim). His fear that any wife or daughters that he may have in the future will be discriminated against because they would wear hijabs is also insufficient to show that he will be singled out for persecution. First, he has neither a wife nor a daughter. See S-Cheng v. Ashcroft, 380 F.3d 320, 323 (8th Cir.2004) (rejecting a well-founded-fear claim “based on hypothetical or speculative facts”); Huang v. I.N.S., 421 F.3d 125, 129 (2d Cir.2005) (same). Second, even if Mirhakim were married and had daughters, the discrimination — and it would be discrimination, and not persecution, see Chen v. Ashcroft, 381 F.3d 221, 233 n. 20 (3d Cir.2004) — on the basis of the hijabs would be directed at them, and not at him.
The IJ noted that the Uzbek government suppresses what it perceives to be religious extremism. Mirhakim argued that, as a pious Muslim, he is likely to be affected by this policy. To support this argument, he testified that the Uzbek government keeps the mosques in the country under surveillance. However, surveillance itself is insufficient to establish a well-founded fear of persecution. See Chavarria v. Gonzalez, 446 F.3d 508, 519 (3d Cir.2006) (finding that surveillance that is “neither highly imminent nor menacing” does not “rise to the level of persecution”). Thus, the BIA’s conclusion that Mirhakim did not show that he will not suffer future persecution is supported by substantial evidence in the record.[6]
*821 For the foregoing reasons, we will deny the petition for review.

. Mirhakim testified in English because he was unwilling to speak with an Uzbek in the room for fear that the Uzbek government would learn about the testimony. The Immigration Judge noted that Mirhakim did not appear to have any difficulty understanding the questions or articulating his answers. Mi-rhakim did not raise any arguments about testifying in English in his appeal to the BIA, nor does he do so here. Accordingly, any claim about the language of his testimony is waived.

. Although Mirhakim testified that his friend was arrested for organizing an anti-government group, he argued in his appeal to the BIA, and again in his petition for review, that his friend was arrested "for his religious practices.” The BIA did not address this discrepancy. In any event, the BIA plausibly concluded that the arrest of this friend, who was a part of the group that attended the religious meetings, was insufficient to show that Mi-rhakim had been or likely will be persecuted if forced to return to Uzbekistan.

. Since the IJ did not make a credibility determination, we proceed as if Mirhakim's testimony was credible. See Kayembe v. Ashcroft, 334 F.3d 231, 235 (3d Cir.2003).

. For the first time in the proceedings, Mi-rhakim makes an extraordinary-circumstances claim. He argues that he paid a lawyer to file his asylum application at a time *819 when the filing would have been timely, but that the lawyer disappeared with the money. Since Mirhakim did not raise this argument below, he cannot raise it here. See 8 U.S.C. § 1252(d) (requiring applicants to exhaust all administrative remedies available as of right); Joseph v. Att’y Gen., 465 F.3d 123, 125 (3d Cir.2006). Mirhakim may wish to bring his argument for ineffective assistance of counsel to the BIA in a motion to reopen.

. In his brief, Mirhakim states that he was under constant surveillance by the Uzbek government. (Pet. Br. at 17) However, Mirhakim did not testify that the Uzbek government constantly surveilled him.

. Mirhakim also asks that we grant him humanitarian asylum. Humanitarian asylum is available only in the case of an alien who has suffered particularly atrocious past persecution. See 8 C.F.R. § 208.13(b)(l)(iii); Naizgi v. Gonzales, 455 F.3d 484, 488 (4th Cir.2006). Here, of course, we have upheld the finding that Mirhakim suffered nothing amounting to past persecution at all.
In the alternative, Mirhakim asks that we remand the case to the BIA for a new hearing. Because we find that substantial evidence supports the BIA's decision, we have no basis on which to remand.